Filed 11/09/15  Marriage of Solomon CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of LINDA E. and THOMAS SOLOMON. | H039320 (Santa Clara County Super. Ct. No. 6-13-FL009758) |
| LINDA E. HERR, Respondent, v. THOMAS SOLOMON, Appellant. | |

Appellant Thomas ("Tom") Solomon and respondent Linda Herr were married for almost 23 years when Linda filed for dissolution of the marriage.  (We will refer to the parties by their first names for the sake of clarity.)  After a four-day court trial, the court issued an order dividing the parties' property.  In a separate proceeding, it issued an order terminating their marital status.

Tom appeals the judgment as it relates to the division of the parties' property.  He argues the trial court erred when it granted Linda's motion for evidentiary sanctions pursuant to Family Code section 2107 based on his failure to serve his declarations of disclosure.  (All further undesignated statutory references are to the Family Code.)  He specifically contends (1) the court erred by hearing the motion for evidentiary sanctions

on the first day of trial because he did not receive 16 days notice of the motion as required under Code of Civil Procedure section 1005; (2) the court's order exceeded the relief requested in the motion and the relief available under section 2107; and (3) the court abused its discretion and denied him due process when it excluded his documentary evidence and prevented his witness from testifying. Tom also contends the court erred when it failed to file a tentative decision after trial.

Linda argues that Tom's appeal is frivolous and requests sanctions on appeal. We will deny Linda's request for appellate sanctions because it is procedurally defective. With respect to Tom's claims, we find no error related to the court's order imposing evidentiary sanctions under section 2107, and we conclude the court did not fail to issue a tentative decision. We also conclude that Tom has failed to provide an adequate record to permit review of some of the arguments in support of his claims. We will therefore affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

The facts and procedural history are based on the clerk's transcript only. Although Tom has appealed the trial court's order after a four-day court trial, neither party arranged for a court reporter to be present during trial. Since there was no court reporter, there is no reporter's transcript on appeal. As we shall explain, the lack of a reporter's transcript limits our review of the issues on appeal.

### I. *Brief History of the Marriage*

Linda and Tom were married on August 13, 1988. They separated in June 2011, after 22 years 10 months of marriage. They have five children, who were 7, 11, 13, 15, and 17 years old when Linda and Tom separated.

Tom obtained a bachelor's degree in electrical engineering from Santa Clara University in 1989. He worked as an engineer for a number of years, but has been

unemployed since 2008, except for six months in 2010 when he worked for Linda's father. Linda obtained a bachelor's degree in finance from Santa Clara University in 1987. She worked for Hewlett-Packard Company as a marketing program manager from October 1988 until she was laid off in August 2001. She has been a "stay-at-home mother" since then.

Linda and Tom moved from the Bay Area to Grass Valley in 1998. They purchased a house in Grass Valley and an adjacent five-acre parcel of land. After they separated, Tom remained in the family home and Linda and the children moved to a rented house in Grass Valley. When Linda moved, she left all of their belongings behind, except for some of the children's clothing. Linda alleged that Tom (1) was becoming "increasingly abusive toward [her] and the older children," (2) refused to leave the family home, (3) changed the locks after she left, and (4) denied her access to both her separate property and their community property, including their vehicles. According to a status report from Family Court Services, there is a history of domestic violence in this case.

After Tom became unemployed, the parties had difficulty paying their mortgage. The lender foreclosed on their house in April 2011 and later pursued an unlawful detainer action against Tom. According to Linda, Tom entered into an agreement with their lender "regarding his lock-out date of March 31, 2012, without notice to [her]." After Tom moved out of the family home, he lived in a tent on the adjacent five-acre parcel, using water and electricity from their former home. He also stored the parties' personal property in a tent on that parcel.

## II. Dissolution Action

Linda filed for dissolution of the marriage on June 15, 2011. She filed her petition in Nevada County since the parties lived in Grass Valley at that time. The dissolution action was transferred to Santa Clara County in January 2013, after both parties moved to that county.

3

The parties have joint legal custody of their minor children; Linda has primary physical custody and Tom has "parenting time" with the two younger children. The record suggests the parties have been able to resolve parenting and custody issues through mediation with Family Court Services.

### III. Pretrial Proceedings

Initially, both parties were represented by counsel. On July 13, 2011—four weeks after Linda filed her dissolution action—the parties appeared before the court on Linda's request for an order to show cause regarding the removal of property. Linda presented the court with a three-page list of personal property, including collectibles, artwork, cameras, and a freezer. Linda claimed most of these items were her separate property. The first page described items that had already been boxed up and were in storage; the other two pages contained a list of items that were at the marital residence. Among other things, the parties agreed that (1) a neighbor would stand by and inventory the items while Linda boxed them up, (2) Linda would deliver the items to storage, and (3) Linda would inspect the boxes already in storage and confirm what was there.

In January 2012, Linda's counsel sent Tom a letter requesting he serve his preliminary declaration of disclosure. By March 2012, Tom was representing himself and still had not served his preliminary declaration of disclosure. (It appears Linda has had counsel throughout this litigation.)

The parties appeared for a case management conference on March 22, 2012, at which time the court set the matter for trial of the property issues on June 26, 2012. The court also ordered Tom to serve his preliminary declaration of disclosure by April 13, 2012. The court's written pretrial order advised the parties that they needed to post court reporter fees no later than five days before trial and that failure to post fees would result in the absence of a court reporter. The court also ordered the parties to serve their final

4

declarations of disclosure no later than 45 days before trial and to file and serve updated income and expense declarations no later than one week before trial.

On May 4, 2012, Linda filed a request for an order to show cause regarding custody, visitation, and support. A hearing on the order to show cause was scheduled for June 6, 2012. A copy of the request is not in the record. Tom did not file a response to Linda's request for an order to show cause.

On May 5, 2012, Linda filed a declaration with the court, stating that: (1) the parties owned a 2005 GMC Yukon Denali vehicle as community property, (2) they had agreed that the Denali would be "turned over to" Linda, (3) the Denali was missing, and (4) based on a DMV check, Linda believed Tom had unilaterally sold the Denali and kept the proceeds of the sale. Linda asked the court to order Tom to give her one-half of the sale proceeds. At trial, Linda claimed the Denali was worth $15,758. Tom disputed that amount and told the court he sold the Denali for $12,000.

On May 29, 2012, Linda filed a pretrial statement that set forth the issues for trial, her contentions, and a proposed disposition. According to Linda, the issues included: (1) her request to move, with the children, to Cupertino to live with her mother; (2) child support; (3) the division of property and retrieval of her separate property; (4) sale of the five-acre parcel; (5) a credit pursuant to *In re Marriage of Watts* (1985) 171 Cal.App.3d 366 for the fair market rental value of the marital home; and (6) attorney fees.

In her pretrial statement, Linda stated that Tom was not paying child support, she had not been able to find work in Grass Valley, she depended on her parents for support, and that moving to Cupertino was in the children's best interest. She argued that Tom had violated automatic restraining orders regarding their property. And although she had attempted to retrieve her separate property "via a civil standby," Tom had not cooperated to schedule the event. Linda also stated that Tom was storing the parties' personal property, including her separate property, "in a flimsy storage tent" on their five-acre parcel and would not allow her access. She alleged he had "vandalized and trashed

5

[their] house—broken windows, holes in the walls, rungs missing on the oak staircase railing, and graffiti—and the grounds were littered with trash and discarded items." She also asserted that he would not cooperate regarding the sale of their five-acre parcel and refused to sign a listing agreement.

On June 4, 2012, the parties were scheduled to appear for a mandatory settlement conference. It is unclear whether this settlement conference took place.

On June 6, 2012, the court held a hearing on Linda's order to show cause regarding custody, visitation, and support. Linda appeared with her counsel. Tom did not appear. The court granted Linda's move-away request and made other orders related to the move, finding that the request was not made in bad faith and that the proposed move was in the best interest of the children. The court also ordered that Linda would be allowed to go to her former residence and the five-acre parcel on June 15, 2012, to search for and pick up her personal property. The court deferred ruling on the other issues raised in the request until trial.

Tom failed to appear for the case management and trial readiness conference on June 20, 2012. Linda appeared through her counsel. The court noted that Tom had not filed a pretrial statement or a declaration regarding service of his declaration of disclosure. That same day, Linda filed a motion to preclude Tom from presenting evidence that should have been included in his declarations of disclosure since Tom had failed to serve both his preliminary and final disclosure documents. Linda stated that her counsel had requested the preliminary disclosure by letter in January 2012, and reminded the court that in March 2012 it had ordered Tom to provide the preliminary disclosure by April 13, 2012. The clerk assigned a hearing date for the motion of July 19, 2012, but Linda asked for an order shortening time since the trial was scheduled to begin on June 26, 2012.

6

*IV. Trial*

The case was tried to the court over four non-consecutive days: June 26, July 3, July 26, and August 30, 2012. As we have noted, since neither party requested a court reporter, we do not have a reporter's transcript of the trial proceedings. The only record of the trial consists of: (1) the court's minute orders, (2) exhibit lists prepared by the court clerk, (3) the judgment, and (4) copies of three of the trial exhibits, which the court attached to the judgment.

On the first day of trial, the court asked Tom why he had not served his preliminary and final declarations of disclosure and why he had "not participate[d] at the Court ordered settlement conference." Due to Tom's "non-compliance," the court ordered that Tom would not be allowed to present evidence on the issues raised in Linda's declarations of disclosure. The court also denied Tom's request for a continuance to obtain counsel on the ground that his request was untimely. During the two-month period over which the case was tried (June 26 to August 30, 2012), Tom did not file a declaration of disclosure or obtain counsel.

Linda and her mother, Hedy Herr, testified at trial. Tom cross-examined Linda, but did not testify himself. On the fourth day of trial, Tom brought Sean Solomon (hereafter Sean) to court as a prospective witness, but Sean did not testify.

Linda introduced 15 exhibits into evidence, many of which consisted of multiple documents. Linda's exhibits included (1) Xspouse printouts and a "CFLR Propertizer" table[1]; (2) photos of the family residence; (3) a lists of items Linda claimed were her

---

[1] Xspouse is a privately developed computer program used by family law practitioners to calculate spousal support and child support. (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 378; *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1079.) Xspouse also has a property division module. (<http://www.xspouse.com/> [as of Nov. 6, 2015].) The CLFR Propertizer is a property division software program used to list, value, and analyze marital assets and debts.

7

separate property; (4) creditor statements; (5) photos of personal property, including a boat; (6) a promissory note, (7) a DMV notice, administrative citations, and notices of code violations; and (8) other documents. Only three of Linda's exhibits are in the record. Tom did not introduce any exhibits into evidence.

Linda's Exhibit 11 was an Xspouse list of 379 items of personal property, some of which were Linda's separate property or community debts, with dollar values assigned to each item. On the third day of trial, the parties stipulated to the values listed on Exhibit 11 as the fair market value of the items listed, except for 14 enumerated items. The court then ordered the parties to meet for an informal settlement conference on July 30, 2012, and to exchange, by August 17, 2012, any and all financial records covering the period 2008 to the present. The record does not indicate whether this settlement conference took place or what documents, if any, were exchanged.

On August 30, 2012, the fourth and final day of trial, Linda presented a list of the 14 remaining disputed items of property with proposed values and allocations. Linda's counsel had prepared this list using the CFLR Propertizer software. The list was marked as Exhibit 14. The parties then presented argument regarding the items on Exhibit 14. During trial, Tom signed the listing agreement for the five-acre parcel.

On the last day of trial, the court made several rulings from the bench. The court ordered that the proceeds of any sale of the five-acre parcel would be placed into a trust account, gave Linda's counsel discretion to place the sale proceeds in her office trust account or to establish a separate trust account for this purpose, and ordered that both parties reserved the right to seek reimbursement for clean-up costs related to the property. The court found that the items listed on Linda's Exhibit 6, except for four items, were her

---

(<http://legalsolutions.thomsonreuters.com/law-products/Forms/CFLR-Propertizer/p/100001769> ([as of Nov. 6, 2015].)

8

separate property. The court ordered Linda to retrieve the separate property items she had access to, and it ordered Tom to return the separate property items Linda did not have access to. The court also reserved jurisdiction to "make rulings on anything that may have been overlooked" and stated that anything that remained "unresolved by the Court's ruling, may be placed back on calendar."

On November 16, 2012, the court issued a written ruling on the remaining unresolved issues. As for the 14 items on Exhibit 14, the court found that five of them had no value. As for the remaining nine items, the court adopted the values suggested by Linda and assigned the value of the items to Tom. The court found that the total value of the property assigned to Tom was $56,558, and it ordered Tom to make an equalizing payment of $28,279 to Linda. The court also found that Tom had "engaged in conduct [that] frustrated the policy of the law to promote settlement of litigation and reduce the cost of litigation," and it ordered Tom to pay $20,000 in attorney fees to Linda's counsel. Neither party requested a statement of decision within 10 days of service of the trial court's ruling. (Cal. Rules of Court, rule 3.1590(d); all further rule citations are to the Rules of Court.)

In a separate proceeding, the court issued an order terminating the parties' marital status effective November 6, 2012, and it restored Linda's name to Linda Herr.

### V. Linda's Post-trial Request for Exclusive Authority to Sell the Five-Acre Parcel; Tom's Objections to the Court's Ruling After Trial

On December 6, 2012, Linda filed a motion requesting exclusive authority over the sale of the five-acre parcel. Linda stated that the parties had had an offer for two months for $78,000, but Tom refused to cooperate in selling the property. A hearing on the motion was set for December 12, 2012, and later continued to December 19, 2012. According to Linda, Tom objected to the proposed sale of the five-acre parcel because the buyer wanted seller financing. He had stated in an e-mail: " 'Do you seriously want

to [add] seller financing headaches to the issues we have going on[?] If they want seller financing[,] they need to up the offer and we need to agree on interest, terms, etc.' "

On December 11, 2012, Tom sent a letter to the court in which he asserted that the court's November 16, 2012 ruling was procedurally improper because the court never filed a tentative decision. He argued that since there was no tentative decision, he was unable to file objections pursuant to Rule 3.1590. He stated that he wanted to object and asked for directions on how to proceed. He also asked the court to either set the matter for a case management conference or issue a tentative ruling.

On December 18, 2012, the day before the hearing on the motion, Tom filed opposition papers in which he explained that he objected to the sale because of the request for seller financing. Tom argued, "Buyers usually take this route when they cannot obtain a loan from a bank. . . . This is not a secure or wise way to sell a property, which is why I denied both offers."

In his papers, Tom objected that the court's November 16, 2012 ruling after trial was "procedurally deficient" because the court never issued a tentative ruling and he was therefore unable to object to the court's proposed ruling. Tom attached a copy of his December 11, 2012 letter objecting to the court's November 16, 2012 ruling. Tom also argued that there were other property issues that were not heard at trial. He asserted that Linda had breached her fiduciary duties by liquidating community funds during the marriage and estimated that she had taken more than $200,000 "from the community." And he alleged she had taken over $170,000 from their IRA's and over $200,000 from a home equity line of credit. We do not know whether any of these issues were raised at trial because a reporter's transcript of the trial proceedings does not exist.

On December 19, 2012, the court ordered Tom to sign the sales agreement for the five-acre parcel within 24 hours. The court also ordered that if he failed to do so, the court clerk would sign in his place. (Tom apparently failed to comply, since the court issued a subsequent order directing the clerk to sign the sales agreement.) As for Tom's

objection that the court had failed to issue a tentative decision, the court held: "No Statement of Decision was requested. Thus, the court was not required to issue a Statement of Decision."

That same day, the court entered judgment in accordance with its November 16, 2012 ruling. On January 18, 2013, the court filed a second judgment in accordance with its ruling. Both judgments were prepared by Linda's counsel. It is not clear why the second judgment was filed, but it appears to be an amended judgment, since the wording of the second judgment is different from the original judgment and it has one more exhibit than the original judgment.

## DISCUSSION

Tom presents two main issues on appeal. First, he contends the trial court erred when it granted Linda's section 2107 motion to prevent him from presenting evidence at trial. Second, he contends the court erred when it failed to file a tentative decision after trial and when it refused to provide the tentative decision after he brought the problem to the court's attention. Linda has requested sanctions on appeal. Before addressing the issues on the merits, we discuss the inadequacy of the record.

### I. *Adequacy of Record for Appellate Review*

On appeal, the trial court's judgment is presumed to be correct and the appellant has the burden of overcoming this presumption of correctness. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) "All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

As the appellant, Tom has the burden of overcoming the presumption of correctness. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1285 (*Maria P.*); *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 (*Oliveira*).) That burden includes presenting

11

an adequate appellate record that demonstrates the alleged error.  (*Maria P.*, at p. 1285; *Oliveira*, at p. 1362.)  "The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court [erred]."  (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448.)  Failure to provide an adequate record on an issue requires that the issue be resolved against the appellant.  (*Maria P.*, at p. 1285; *Oliveira*, at p. 1362 [judgment must be affirmed where appellant fails to present adequate record for review]; *Foust v. San Jose Construction Co. Inc.* (2011) 198 Cal.App.4th 181, 187 [argument forfeited where record on appeal contained only excerpts from clerk's transcript and no reporter's transcript or exhibits].)  As we have noted, the record on appeal does not include a reporter's transcript for any of the four days of trial.  As we explain, that severely limits our review and requires us to apply the presumption of correctness to resolve some of the issues Tom raises on appeal.

In his reply brief, Tom discusses the local procedural rules in Nevada County for obtaining a court reporter for family court proceedings and he argues that as a self-represented litigant, he did not know that he needed to request a court reporter in advance of trial, or that he would need a reporter's transcript in the event he decided to appeal.[2] But a self-represented party is held to the same procedural rules as a party who is represented by an attorney.  As this court has explained, "[u]nder the law, a party may choose to act as his or her own attorney.  [Citations.]  '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.  [Citation.]'  [Citation.]  Thus, as is the case with attorneys, [self-represented] litigants must follow correct rules of procedure.  [Citations.]"  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)  Because Tom was not excused from the requirement of providing this court with an adequate record merely because he chose to

---

**2** The court's written pretrial order contained information regarding the posting of court reporter fees and who pays the fees, and advised that the "[f]ailure to post fees will result in absence of [a] reporter."

represent himself at trial, we will affirm those issues on appeal where Tom has not provided any support in the record for his claims.

## II. *Section 2107 Motion to Prevent Tom from Presenting Evidence at Trial*

Tom contends:  (1) the court erred by hearing Linda's section 2107 motion on the first day of trial because he did not receive 16 days notice of the motion as required by Code of Civil Procedure section 1005; (2) the court's order on Linda's motion exceeded the relief she requested and the relief available under section 2107; and (3) the court abused its discretion and denied him due process when it excluded both his documentary evidence and prevented Sean from testifying.

### A.  Standard of Review

The parties do not cite any case law that discusses the standard of review for an order awarding evidentiary sanctions under section 2107, subdivision (b).  In *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470 (*Feldman*), the court held that an order imposing monetary sanctions under section 2107, subdivision (c) is reviewed under the abuse of discretion standard "because the sanction is similar to that imposed under section 271 as well as similar to a sanction for civil discovery abuses (which are reviewed for abuse of discretion)."  (*Feldman*, at p. 1478, citing *American Home Assurance Co. v. Société Commerciale Toutélectric* (2002) 104 Cal.App.4th 406, 435 ["The court's discretion to impose discovery sanctions is broad, subject to reversal only for manifest abuse exceeding the bounds of reason"].)  Generally speaking, whether sanctions should be imposed for discovery "misuse," and, if so, the appropriate type of sanction, are reviewed for an abuse of discretion.  (*New Albertson's, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422.)  In view of this authority, we hold that an order imposing evidentiary sanctions under section 2107, subdivision (b) is reviewed for an abuse of discretion.  Under that standard, " 'we ask whether the trial court's findings of fact are

13

supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious.' " (*People v. Clancey* (2013) 56 Cal.4th 562, 578.)

"To the extent that we are called upon to interpret the statutes relied on by the trial court to impose sanctions, we apply a de novo standard of review.  [Citation.]  We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review.  [Citation.]" (*Feldman*, *supra*, 153 Cal.App.4th at p. 1479.)

**B.  Duty to Disclose and Sanctions for Failure to Serve Disclosures (§ 2107)**

Under the Family Code, the parties to a dissolution action have a duty to make "a full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest." (§ 2100, subd. (c).)  The disclosure "must be made in the early stages of a proceeding for dissolution of marriage . . . regardless of the characterization as community or separate, together with a disclosure of all income and expenses of the parties." (*Ibid*.)  The duty of disclosure is ongoing and requires each party to update and augment any prior disclosures fully and accurately.  (*Feldman*, *supra*, 153 Cal.App.4th at p. 1476.)

Section 2107 provides in relevant part:  "(a) If one party fails to serve on the other party a preliminary declaration of disclosure under Section 2104 or a final declaration of disclosure under Section 2105, . . . , and if the other party has served the respective declaration of disclosure on the noncomplying party, the complying party may, within a reasonable time, request preparation of the appropriate declaration of disclosure . . . .  [¶] (b) If the noncomplying party fails to comply with a request under subdivision (a), the complying party may do one or more of the following:  [¶]  (1) File a motion to compel a further response.  [¶]  (2) File a motion for an order preventing the noncomplying party from presenting evidence on issues that should have been covered in the declaration of disclosure.  [¶]  . . .  [¶]  (c) If a party fails to comply with any provision of this chapter,

14

the court shall, in addition to any other remedy provided by law, impose money sanctions against the noncomplying party. Sanctions shall be in an amount sufficient to deter repetition of the conduct . . . , and shall include reasonable attorney's fees, costs incurred, or both, unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

There does not appear to be any dispute that Linda served her preliminary and final declarations of disclosure. Moreover, it is undisputed that Tom did not serve either disclosure. In accordance with section 2107, subdivision (a), Linda's counsel asked Tom to file a preliminary declaration of disclosure in January 2012. When he failed to comply, Linda obtained an order from the court in March 2012 directing Tom to comply by April 13, 2012. After Tom failed to comply with that order, Linda made the motion authorized by subdivision (b)(2) of section 2107 to prevent Tom "from presenting evidence on issues that should have been covered in the declaration of disclosure." On the first day of trial, the court granted Linda's motion to exclude evidence. In addition to preventing Tom from introducing certain evidence, the court imposed a monetary sanction in the form of attorney fees, as authorized by subdivision (c) of section 2107.

### C. Tom has not demonstrated error based on a lack of adequate notice of the motion

Tom argues the court erred by hearing Linda's section 2107 motion on the first day of trial because, under Code of Civil Procedure section 1005, he was entitled to 16 days notice of the motion. He contends that since the motion was filed on June 20, 2012—just six days before the trial started—and a hearing date of July 19, 2012, had been assigned, the court erred when it granted the motion without affording him a full 16 days to respond. But Tom neglects to mention that Linda's motion advised the court that the case was set for trial on June 26, 2012, and the motion contained a request for an order shortening time so it could be heard on the first day of trial. Under Code of Civil

15

Procedure section 1005, subdivision (b), the court "may prescribe a shorter time" for notice. Since we do not have a reporter's transcript of the proceedings on Linda's section 2107 motion, we rely on the presumption of correctness to conclude the court granted Linda's request for an order shortening time.

Without a record, we also cannot determine whether Tom either waived or forfeited the 16-day notice requirement. Nothing in the record suggests Tom objected to the court hearing the section 2107 motion on June 26, 2012, on notice grounds. "An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the trial court by some appropriate method." (*In re Carrie W.* (2003) 110 Cal.App.4th 746, 755, internal quotations marks and brackets omitted.) For these reasons, we conclude Tom has not met his burden of demonstrating that the trial court erred when it heard the section 2107 motion on the first day of trial.

## D. Tom has not demonstrated that the evidentiary sanction imposed here was excessive

Tom argues that the court's order exceeded the relief Linda requested in her motion, as well as the relief that is available under section 2107. Upon Tom's failure to serve the declarations of disclosure required by the Family Code, subdivision (b)(2) of section 2107 authorized a motion "for an order preventing the noncomplying party [(Tom)] from presenting evidence on issues that should have been covered in the declaration of disclosure." In her motion, Linda quoted subdivision (b)(2) of the statute, and asked the court to "prevent [Tom] from presenting any evidence on issues that should have been covered" in his declaration of disclosure. The court's minute order states: "Due to noncompliance, Court orders [Tom] not be allowed to present evidence as to the issues raised in [Linda's] Declarations of disclosure."

16

Tom contends the court erred when it ordered that he "would not be allowed to even present evidence on matters from [Linda's] disclosures" and that the order should have been limited to matters that should have been covered by his disclosures. But since (1) Tom never filed a declaration of disclosure, (2) none of Linda's disclosures are in the record, and (3) we do not have a reporter's transcript of the trial, we do not have a record from which to evaluate what matters "should have been covered in [Tom's] declaration of disclosure." (§ 2107, subd. (b)(2).) It is reasonable to assume that Tom's disclosures would have covered many of the same issues as Linda's, since they were married for over 22 years. We conclude Tom has not met his burden to show error on this ground. Moreover, other than documents relating to his student loans, and a broad reference to "bank records and title documents," Tom does not state what evidence he might have introduced but for the court's order on the section 2107 motion. Nor does he explain how the court's order prejudiced him in the presentation of his case. Thus, this claim of error lacks merit.

### E. The court did not abuse its discretion by imposing evidentiary sanctions

Tom contends the court abused its discretion, denied him due process, and prevented him from having a fair trial when it excluded both his documentary evidence and prevented his witness from testifying.

On the fourth day of trial, Tom brought "Witness" Sean with him to court. According to the minute order, Sean was excluded from the courtroom at the request of Linda's counsel. This occurred at the beginning of the proceedings, and the record does not suggest it was anything other than a standard ruling under Evidence Code section 777 to exclude non-party witnesses who are not at the time under examination so that they "cannot hear the testimony of other witnesses." The record does not indicate (1) why Tom brought Sean to court that day, (2) that Tom ever called Sean to the witness stand or asked that he be allowed to testify, (3) that the court ordered that Sean would be

17

precluded from testifying, or (4) that Tom objected to such an order, thereby preserving the issue for appeal. In the absence of a record, we apply the presumption of correctness and conclude that the trial court did not abuse its discretion when it ordered Sean excluded from the courtroom.

In his opening brief, without citation to the record, Tom states that he brought Sean to court to "testify concerning the problems that occurred from [*sic*] [Linda] and her counsel at the court-ordered mid-trial exchange of documents." Nothing in the record supports this assertion. A party's arguments on appeal should not rely on facts that are outside the record; statements of alleged facts in the briefs that are not in the record will be disregarded by the appellate court. (*Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625.) We therefore disregard Tom's assertions regarding the proffered substance of Sean's testimony.

Citing *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 (*Elkins*), Tom argues the trial court abused its discretion and prevented him from having his day in court when it excluded all of his evidence. In *Elkins*, the California Supreme Court invalidated a local superior court rule and a trial scheduling order used in family court in Contra Costa County. That rule and order provided that in dissolution trials, the parties must present their cases by means of written declarations. Witness testimony under direct examination was not allowed except in " 'unusual circumstances,' " although parties were permitted to cross-examine declarants upon request. In addition, the parties were required to establish in their pretrial declarations the admissibility of all exhibits they sought to introduce at trial. (*Id.* at pp. 1344, 1346-1347.) The husband's pretrial declaration in *Elkins* failed to establish the evidentiary foundation for all but two of his 36 exhibits; the trial court therefore excluded the remaining 34 exhibits. Without the exhibits, and without the ability to present his case or establish a foundation for his exhibits through oral testimony, the husband rested his case. The trial court then divided the marital property substantially in the manner requested by the wife. (*Id.* at pp. 1344-1345, 1347-1350.)

18

The husband in *Elkins* filed a petition for writ of mandate challenging the local rule and trial scheduling order on the grounds that they were inconsistent with the guarantee of due process of law, and that they conflicted with various provisions of the Evidence Code and the Code of Civil Procedure. The respondent court countered that the promulgation of the rule and order came within its power to govern the proceedings before it, and that the rule and order were consistent with constitutional and statutory provisions. (*Elkins*, *supra*, 41 Cal.4th at pp. 1345, 1350.)

The Supreme Court in *Elkins* concluded that, as applied to contested marital dissolution trials, the rule and order were inconsistent with various statutory provisions. It said: "[M]arital dissolution trials proceed under the same general rules of procedure that govern other civil trials. Written testimony in the form of a declaration constitutes hearsay and is subject to statutory provisions governing the introduction of such evidence. Our interpretation of the hearsay rule is consistent with various statutes affording litigants a 'day in court,' including the opportunity to present all relevant, competent evidence on material issues, ordinarily through the oral testimony of witnesses testifying in the presence of the trier of fact." (*Elkins*, *supra*, 41 Cal.4th at p. 1345.) The Supreme Court then concluded that the trial court abused its discretion by excluding most of the husband's evidence simply because he failed, prior to trial, to file a declaration establishing the admissibility of his trial evidence, and that the sanction of exclusion was disproportionate and inconsistent with the policy favoring determination of cases on their merits. (*Id.* at pp. 1363-1364.)

In our view, Tom's reliance on *Elkins* is misplaced since the evidentiary sanction imposed here was expressly authorized by section 2107. Unlike *Elkins*, this case does not involve a local rule or procedure that conflicts with statutory law regarding the conduct of a trial. The trial court did not preclude Tom from presenting evidence based on an invalid local rule; instead, it imposed a sanction that was expressly authorized by statute.

19

Finally, Tom contends the trial court "applied evidence sanctions in a mechanical fashion without considering alternative measures or lesser sanctions, resulting in the exclusion of all of [his] exhibits and witnesses." Tom does not cite any legal authority that required the court to consider lesser sanctions before imposing evidentiary sanctions. And the limited record before us does not indicate whether Tom objected to the evidentiary sanction or ever asked the court to impose a lesser sanction. Section 2107, subdivision (b) authorizes the complying party (Linda in this case) to file either "a motion to compel a further response" or a motion for evidentiary sanctions, or both, requesting the noncomplying party to serve his or her declaration of disclosure.

In this case, Linda's counsel requested Tom's declaration in January 2012. After Tom failed to comply, Linda asked the court to order him to comply at the case management conference on March 22, 2012. The court made the requested order. In addition, the court's written pre-trial order, which was filed the following day, ordered Tom to serve his "Final Declaration of Disclosure" no later than 45 days before trial, which was May 11, 2012. Tom did not comply with either of the court's orders. He did not serve his initial declaration by the court's April 13, 2012 deadline or his final declaration by May 11, 2012. Linda then waited until mid-June to file her section 2107 motion, which gave Tom more time to comply with his duty of disclosure and the trial court's orders. After Linda filed her section 2107 motion, Tom still failed to comply. Finally, it appears Tom did not file his declaration of disclosure at any time during the two month-period this case was tried to the court.[3] Given the importance of the

---

[3] At oral argument, Tom's counsel read from a transcript that he identified as the "reporter's transcript" from June 26, 2012, the first day of trial. According to Tom's counsel, the first page of this transcript shows that Tom served his declarations of disclosure on Linda at the beginning of the trial. But that "reporter's transcript" is not part of the record on appeal, and Tom did not move to augment the record with any such "reporter's transcript." The minute orders in the clerk's transcript indicate that no court reporter was present on any of the four days of trial, and the clerk of the court filed a

20

declarations of disclosure in a marital dissolution action, we conclude the court did not abuse its discretion when it ordered evidentiary sanctions in the circumstances of this case.

For all these reasons, we conclude the trial court did not err when it granted Linda's section 2107 motion for evidentiary sanctions.

### III.   Trial Court's Alleged Failure to File a Tentative Decision

Tom contends the court violated Code of Civil Procedure section 632 and Rule 3.1590 when it failed to file a tentative decision after trial and when it refused to prepare the tentative decision after Tom brought the problem to the court's attention in his December 11, 2012 letter.  As we will explain, this contention is without merit.

Code of Civil Procedure section 632 provides, in relevant part:  "In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required.  The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial.  The request must be made within 10 days after the court announces a tentative decision . . . .  The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision.  After a party has requested the statement, any party may make proposals as to the content of the statement of decision."

Rule 3.1590 governs tentative decisions, statements of decision, and judgments in court trials.  It provides, in relevant part, that "[o]n the trial of a question of fact by the court, the court must announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk."  (Rule 3.1590(a).)

---

certificate stating that "Reporter's Transcripts will not be included in this record" for that reason.

In this case, the court announced its tentative decision on some issues "by an oral statement," which was entered in the minutes, and its decision on other issues "by a written statement filed with the clerk." (Rule 3.1590(a).) According to its minute order, the court announced the following tentative decisions orally on the last day of trial (August 30, 2012): (1) the proceeds of any sale shall be paid into a trust account; (2) Linda's counsel "shall have the discretion whether to deposit the funds into her office trust account or set up a separate trust account in the names of both parties"; (3) "both parties reserve the right to seek reimbursement for costs incurred in the clean up of the property"; (4) the items listed on Linda's Exhibit 6 are her separate property, except for the dish set, freezer, dryer, and leather office chair; and (5) to the extent Linda had access to her separate property items, "she shall retrieve them herself," and if she does not have access, Tom "shall return them to" her. These oral pronouncements were a partial tentative decision.

Then, on November 16, 2012, the court filed its written "Ruling" on the issues it had taken under submission, including: (1) determining the values of the 14 disputed items on Linda's Exhibit 14, (2) ordering Tom to make an equalizing payment of $28,279, (3) ordering Tom to pay $20,000 in attorney fees to Linda's attorney, and (4) holding that the equalization payment and attorney fees may be paid from the proceeds of the sale of the five-acre parcel. This written ruling, together with the court's prior oral pronouncements, was the court's tentative decision. Nothing in Rule 3.1590 precludes the court, in a multi-issue case, from announcing a portion of its tentative decision from the bench and announcing its tentative decision on issues it has taken under submission by written statement. (See *Wallis v. PHL Associates, Inc*. (2013) 220 Cal.App.4th 814, 822, 825, 826 [trial court made piecemeal oral announcements of its tentative decision on three separate hearing dates; "time to request a statement of decision runs from the time the trial court completes the announcement of its decision on all reserved issues"].) The fact that the court labeled its written statement a "Ruling"

22

rather than a "tentative decision" does not mean that the court failed to issue a tentative decision. Thus, Tom's contention that the court violated Code of Civil Procedure section 632 and Rule 3.1590 because it never issued a tentative decision is without merit.

We acknowledge that subdivision (c) of Rule 3.1590 provides: "The court in its tentative decision *may*: (1) State that it is the court's proposed statement of decision, subject to a party's objection under [rule 3.1590](g); [¶] (2) Indicate that the court will prepare a statement of decision; [¶] (3) Order a party to prepare a statement of decision; or [¶] (4) Direct that the tentative decision will become the statement of decision unless, within 10 days after announcement or service of the tentative decision, a party specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals not included in the tentative decision." (Italics added.) Tom paraphrases Rule 3.1590(c) and argues that "[n]one of that happened here." But subdivision (c) of Rule 3.1590 uses the word "may" and is therefore permissive. Thus, the court may, but is not required to, do any of the things listed in Rule 3.1590(c). That the court's written tentative decision filed on November 16, 2012 did not do any of the things enumerated in Rule 3.1590(c) does not mean it was not a tentative decision.

Subdivision (d) of Rule 3.1590 provides: "Within 10 days after announcement or service of the tentative decision, whichever is later, any party that appeared at trial may request a statement of decision to address the principal controverted issues. The principal controverted issues must be specified in the request." And, if any party requests a statement of decision, any other party may make proposals regarding the content of the statement of decision within 10 days after a statement of decision is requested. (Rule 3.1590(e).) Rule 3.1590 also contains provisions governing the preparation and service of a proposed statement of decision and judgment by the court or a party and for objecting to the proposed statement of decision or judgment. (Rule 3.1590(f)-(j).) In this case, neither party requested a statement of decision within 10 days after the trial court served its November 16, 2012 tentative decision. It was not until December 11, 2012,

23

that Tom sent his letter to the court making such a request. Even if we were to construe that request as a request for statement of decision, it was untimely since it was filed on December 12, 2012—26 days after the court served its tentative decision. Absent a timely request, a party does not have a right to a statement of decision. (*In re Marriage of Steinberg* (1977) 66 Cal.App.3d 815, 822.) The trial court therefore did not err when it held it was not required to issue a statement of decision.[4]

### *Linda's Request for Sanctions*

Linda requests appellate sanctions on the ground that Tom's appeal is frivolous. Rule 8.276 provides, in relevant part: "(a) On motion of a party . . . , a Court of Appeal may impose sanctions, including the award or denial of costs under rule 8.278, on a party or an attorney for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay; [¶]. . . [¶] (b) (1) A party's motion under (a) . . . must be served and filed before any order dismissing the appeal but no later than 10 days after the appellant's reply brief is due." (See also *In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 180 (*Petropoulos*) [sanctions request for frivolous appeal denied because not raised in separate motion].) Linda's sanctions request is procedurally improper because it is set forth in her respondent's brief and she has not filed a separate motion for sanctions within the time limit set forth in Rule 8.276. Because of this procedural defect, Linda's request for sanctions on appeal is denied. (*Petropoulos*, at p. 180; *Kajima Engineering and*

---

[4] At oral argument, Tom's counsel argued that the court made a clerical error in calculating the amount of the equalizing payment because it erroneously listed his student loans as an asset rather than a debt. Tom's counsel acknowledged that he had not raised this point as a claim of error in his briefs. Tom's opening brief mentions this line item in describing the procedural history of the case, but does not raise any claim of error or present any argument on this point. We generally do not consider arguments that were raised for the first time at oral argument. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 977-978, fn. 12.) In any event, the record here is inadequate to review this claim and we decline to do so.

*Construction Company, Inc. v. Pacific Bell* (2002) 103 Cal.App.4th 1397, 1402 [former rule 26(e)].)

**DISPOSITION**

The judgment is affirmed.

                                               _____

                                               MÁRQUEZ, J.

WE CONCUR:


_____

RUSHING, P.J.


_____

WALSH, J.[*]

---

[*]Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.